UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVIS SINCLAIR,

Movant,

-against-

UNITED STATES OF AMERICA,

Respondent.

**OPINION AND ORDER**

25-CV-07015 (PMH)

23-CR-00503 (PMH)

PHILIP M. HALPERN, United States District Judge:

Travis Sinclair ("Sinclair") moves *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Petition"). Liberally construed, Sinclair's § 2255 grounds are summarized as follows: (1) Hobbs Act Robbery is not a crime of violence; (2) the Court erred in imposing an upward variance from the Sentencing Guidelines range; (3) Defendant was improperly sentenced as a career offender; and (4) Defendant's lawyer was ineffective. (Civ. Doc. 1, "Pet.").[1]

For the reasons set forth below, the motion for relief under 28 U.S.C. § 2255 is DENIED and the Petition is DISMISSED.

## BACKGROUND[2]

Sinclair, in 2022, pled guilty to a 13-count Information, including counts of robbery, brandishing firearms, carjacking, narcotics distribution, fraud, visa fraud, counterfeiting,

---

[1] Sinclair's motion was treated as a petition commencing a civil action, No. 25-CV-07015. Citations to the electronic docket in the criminal proceeding are referred to herein as "Crim. Doc." and citations to the electronic docket in the civil proceeding are referred to herein as "Civ. Doc.".

[2] The Court draws the background facts principally from the Petition, the Government's opposition thereto (Crim. Doc. 88, "Gov't Pet. Opp."), and Sinclair's reply papers (Civ. Docs. 11, 12), as well as the record of the underlying criminal proceeding, including the amended Presentence Investigation Report dated December 16, 2024, prepared by the Probation Office in connection with Sinclair's sentencing (Crim. Doc. 77, "PSR"). Citations to these materials correspond to the pagination generated by ECF.

possessing contraband in prison, and failure to appear in Court. (PSR ¶ 36). Specifically, he participated in an armed carjacking of an individual believed to be a marijuana dealer as well as 12 additional armed robberies in the Bronx and Mount Vernon, New York. (*Id.*). A firearm was brandished during nine of the robberies and discharged during two. (*Id.*). Sinclair was also responsible for the distribution of approximately 285 pounds or 129 kilograms of marijuana, stealing one kilogram of heroin and one ounce of cocaine, transporting crack cocaine in the Bronx for $2,000, obtaining 100 ecstasy pills and distributing 50 pills to a friend for resale, stealing his girlfriend's credit card and attempting to steal $5,000, using counterfeit currency to pay his weekly rent, lying on a U.S. visa application and possessing marijuana while in custody. (*Id.*).

On July 27, 2022, Judge Kenneth M. Karas sentenced Sinclair to 48 months of imprisonment followed by five years' supervised release. (*Id.*). Sinclair, who had been in custody since 2018, was released that same day and commenced his term of supervised release. (*Id.*).

On November 3, 2022, less than four months after Sinclair began his term of supervised release, he participated in an armed robbery of employees of an auto body shop in Mount Vernon with two other individuals, Kentley Thomas and Howrontz Mattis. (*Id.* ¶¶ 10-11). Sinclair admitted that he went to the body shop with Mattis and Thomas because Thomas had a dispute to settle with individuals at the body shop. (*Id.* ¶¶ 16-17). Sinclair further admitted that he went to the body shop with a firearm, that he stole a bag containing approximately $9,500, and that he fired a firearm in the air as he was running away from the body shop. (*Id.* ¶¶ 16-18). Video footage recovered from the body shop confirmed that Sinclair held a firearm, pointed it at the victims in the body shop, took a bag containing approximately $9,500 from one victim and struck another victim during the armed robbery. (*Id.* ¶ 15).

On November 4, 2022, Sinclair was charged by complaint with Hobbs Act Robbery

Conspiracy, in violation of 18 U.S.C. § 1951, Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2, and discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). (*See* Crim. Doc. 1). On November 29, 2023, Sinclair appeared before this Court and pled guilty, pursuant to a written plea agreement dated November 22, 2023, to a one-count Information charging him with Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2. ("Plea Tr."; *see also* PSR ¶¶ 2, 4-5). After placing Sinclair under oath, the Court conducted a thorough allocution of him. (Plea Tr. at 7-11). Among other things, Sinclair affirmed that he had attended school through the seventh grade; that the medications he was taking for anxiety and depression did not affect his ability to understand the proceedings and answer the Court's questions truthfully; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications. (*Id.* at 8-10). Sinclair further affirmed that his mind was clear and that he understood what was happening. (*Id.* at 10).

Sinclair confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id.* at 10). The Government and defense counsel likewise represented that they had no doubts as to Sinclair's competence to plead guilty. (*Id.*). Accordingly, the Court found that, on the basis of Sinclair's responses to the Court's questions, its observations of his demeanor, and the views of counsel, Sinclair was fully competent to enter an informed plea. (*Id.* at 10-11).

Under the terms of the November 22, 2023 plea agreement which Sinclair signed on November 29, 2023 ("Plea Agreement" at 7), among other things, the Government agreed to accept a guilty plea allocution from Sinclair for Hobbs Act Robbery. (Plea Tr. at 14, 21). The parties stipulated to a base offense level of 20 under the United States Sentencing Guidelines (the "Sentencing Guidelines"); a final offense level of 24; three criminal history points; and a Stipulated

3

Guidelines Range of 57 to 71 months' imprisonment. (*Id.* at 24; *see generally* Plea Agreement). The parties further agreed that "[n]otwithstanding the Guidelines calculation stated above, the parties agree not to seek a sentence outside the range of 12 to 15 years' imprisonment (the "Stipulated Sentencing Range"), or suggest in any way that the Probation Office or the Court consider a sentence outside the Stipulated Sentencing Range of 12 to 15 years' imprisonment." (Plea Agreement at 3).

Sinclair also stipulated in the Plea Agreement that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Sentencing Range of 12 to 15 years' imprisonment." (Plea Tr. at 25; Plea Agreement at 4).[3] At the change of plea hearing, the Court thoroughly reviewed with the parties the impact of the Stipulated Sentencing Range compared to the Stipulated Guidelines Range. (*See* Plea Tr. at 2-5, 19-25, 27). The Government confirmed that if Defendant was charged with another Section 924(c) violation as alleged in the complaint, he would face a mandatory minimum sentence of 25 years' imprisonment based on his prior Section 924(c) convictions in 2022. (Plea Tr. at 3).[4] As a result of the negotiated plea, the parties agreed to a resolution involving only the Hobbs Act Robbery count which carries no mandatory minimum sentence. (*Id.*). The parties further agreed that neither party would advocate for a sentence outside of 12 to 15 years, notwithstanding the Stipulated Guidelines Range of 57 to 71 months. (*Id.* at 3-4). The Government further explained that the

---

[3] Sinclair did not waive his right to assert a claim of ineffective assistance of counsel under the Plea Agreement. (Plea Agreement at 5).

[4] *See* 18 U.S.C. § 924(c)(l)(C) ("In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years[.]").

4

benefit to Sinclair was that he was not facing a mandatory minimum sentence of 25 years. (*Id.* at 4).

At the November 29, 2023 hearing, the Court conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Sinclair understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id.* at 11-14). Sinclair acknowledged that he understood he was giving up those rights, except for his right to counsel. (*Id.* at 13). The Government then, at the Court's direction, set forth the elements of the offense to which Sinclair was pleading guilty. (*Id.* at 15). The Court advised Sinclair of the maximum penalties he would face as a result of his guilty plea and confirmed that he understood these penalties. (*Id.* at 16).

The Court confirmed that Sinclair understood that, when imposing a sentence, the Court would consider the Sentencing Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Sentencing Guidelines. (*Id.* at 19-21). Sinclair confirmed that he understood that he would not be permitted to withdraw his guilty plea if the sentence differed from the Plea Agreement or from what he expected. (*Id.* at 21).

The Court next confirmed that Sinclair had read the Plea Agreement, had discussed "every aspect of it" with his attorney, and understood it fully. (*Id.* at 22-23). Sinclair swore that apart from the Plea Agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the Plea Agreement. (*Id.* at 23-24).[5] The Court further

---

[5] The Court also confirmed that as part of the Plea Agreement, Sinclair was admitting to Specification 2 of a Violation of Supervised Release Petition (the "VOSR Petition") in Case No. 19-cr-00137. (Plea Tr. at 23). This sealed case was transferred from Judge Karas to the undersigned prior to Sinclair's sentencing hearing.

confirmed that Sinclair understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Sentencing Range of 12 to 15 years of imprisonment. (*Id.* at 25). The Court also confirmed that Sinclair understood that his lawyer would not suggest or ask the Court to consider a sentence outside of the Stipulated Sentencing Range. (*Id.* at 27).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Sinclair's plea. (*Id.* at 27). The Government's proof included:

> Surveillance video showing the Defendant and others arriving at the store and robbing the owner and the employee; [w]itness testimony about the Defendant's conduct, including how he discharged the firearm in the air as he was fleeing from [the] scene of the robbery; [t]estimony from the owner of the auto body shop explaining that the shop serviced out-of-state customers, including national car rental companies; [t]estimony from the owner of the shop that the Defendant took a bag containing business proceeds from the store, and that, as a result of the robbery, his business was adversely affected; [a]nd, finally, physical evidence, including shell casings, as well as the money that was stolen during the robbery, which was recovered in connection with the Defendant's arrest.

(*Id.* at 28-29).

Sinclair affirmed that he heard the Government's summary of its proof, and that it was substantially accurate. (*Id.* at 29). Sinclair then made a factual allocution and explained that on November 3, 2022, Thomas said he needed his help because he was fighting with an individual at a body shop in Mount Vernon and to bring his gun. (*Id.* at 29-30). Sinclair pointed his gun at a man in the store and took a bag from him by force because he thought the bag may have contained a gun. (*Id.* at 30). Sinclair also confirmed, in response to questions from the Court, that he shot his gun in the air as he left the store and tossed the gun when he ran from the police. (*Id.* at 31).

The Court found that Sinclair had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his

6

plea was supported by an independent factual basis. (*Id.* at 32-33). The Court, accordingly, accepted the guilty plea. (*Id.*).

On December 12, 2024, Sinclair appeared before this Court for sentencing. ("Sent. Tr.")..[6] The Court found that Sinclair's Sentencing Guidelines Range was calculated at 57 to 71 months based on a Final Offense Level of 24 and a Criminal History Category of II. (*Id.* at 22). Similar to the change of plea hearing, the Government again confirmed that the Stipulated Sentencing Range of 12 to 15 years in the Plea Agreement was "what's known colloquially as an Option A agreement, where the parties agree that they can't argue for a sentence outside of a specified range." (*Id.* at 28). From the Government's perspective, the robbery was "caught on video" and the "evidence was quite strong." (*Id.*). Therefore, the parties discussed what they considered an appropriate resolution and fashioned an agreement that did not involve charging Sinclair with his third Section 924(c) offense that carried a 25-year mandatory minimum sentence. (*Id.* at 28-29). In exchange, both parties would request a sentence between 12 to 15 years that represented an upward variance from the Sentencing Guidelines Range. (*Id.* at 28-30). From the Government's perspective, it was "giving [Sinclair] a significant break" by avoiding a mandatory minimum 25-year term of imprisonment while also proposing a "just sentence" based on Sinclair's criminal history and the strength of the evidence. (*Id.* at 29).

Defense counsel also confirmed Sinclair's agreement with the Government that he would request an upward variance sentence between 12 to 15 years. (*Id.* at 35-36). Therefore, defense counsel endorsed the recommendation of Probation and effectively advocated for a sentence of 144 months based on his background, lack of youthful guidance, mental health conditions and efforts at rehabilitation. (*Id.* at 37-52). Probation had also recommended a sentence of 144 months

---

[6] The sentencing transcript is filed under seal. (Crim. Doc. Dec. 12, 2024 Min. Entry).

of imprisonment. (PSR at 24). The Court explained that in fashioning an appropriate sentence it considered all of the Section 3553(a) factors. (Sent. Tr. at 55-65). The Court balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, the need to protect the public from the defendant's further crimes, and the need to avoid unwarranted sentencing disparities. (*Id.*). The Court considered Sinclair's difficult childhood, the abject poverty he experienced, his physical and mental health conditions, his history of substance abuse, and his criminal history. (*Id.* at 55-62). The Court acknowledged that the parties had agreed in the Plea Agreement to seek a sentence in the range of 12 to 15 years' imprisonment, although their agreement was not binding on the Court. (*Id.* at 57-58). The Court also recognized that Sinclair was not being charged with a third Section 924(c) violation that would subject him to a 25-year mandatory minimum sentence. (*Id.*).

Prior to imposing sentence, the Court explained that it would impose the same sentence whether imposed as a variance or departure. (*Id.* at 59). Ultimately, the Court imposed an upward variance sentence based on the 3553(a) factors, the fact that Sinclair's criminal history score understated the severity of his criminal history, which included serious crimes such as "robbery, brandishing firearms, carjacking, narcotics distribution, fraud, visa fraud, counterfeiting, possessing contraband in prison, [and] failure to appear," and the likelihood he would commit additional crimes. (*Id.* at 59-62). After considering the nature and circumstances of the offense, the uncharged conduct, the defendant's criminal history and the history and characteristics of the defendant, the Court agreed with both Sinclair and Probation, and sentenced Sinclair to 144

months' imprisonment to be followed by a term of three years of supervised release. (*Id.* at 55-66).[7]

The judgment of conviction was entered on December 13, 2024. (Crim. Doc. 75). Sinclair did not file a direct appeal. On August 22, 2025, Sinclair filed a Petition under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. (Civ. Doc. 1). The Court then issued an Order to Answer, directing the Government to respond to the Petition. (Civ. Doc. 4). On November 3, 2025, the Government filed a letter opposing the motion pursuant to 28 U.S.C. § 2255. (Crim. Doc. 88). Sinclair's reply papers in connection with the Petition were filed on December 15, 2025, and Sinclair's Motion was fully submitted that day. (Civ. Doc. 11). On December 29, 2025, Sinclair filed a reply brief supplementing his reply papers in connection with the Petition. (Civ. Doc. 12).

## STANDARD OF REVIEW

A prisoner in federal custody may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).[8] "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the

---

[7] Although not at issue in the instant Petition, the Court also sentenced Sinclair to a consecutive term of 60 months' imprisonment for his violation of supervised release in Case No. 19-cr-00137. (Sent. Tr. at 65).

[8] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 Fed. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017). Further, to successfully challenge a guilty plea conviction under Federal Rule of Criminal Procedure 11, "the petitioner must demonstrate that the violation was prejudicial—where the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

"A § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom, or (2) actual innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1999). Ineffective assistance of counsel claims, however, "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural

and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

A hearing on a § 2255 petition is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible.'" *Brickhouse*, 2017 WL 1049509, at *4 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "[A] district court need not assume the credibility of factual assertions [in a habeas petition], as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## ANALYSIS

Sinclair claims that he is entitled to relief under § 2255 because Hobbs Act Robbery is not a crime of violence; the Court erred in imposing an upward variance from the Sentencing Guidelines Range; he was improperly sentenced as a career offender; and he received ineffective assistance of counsel.

As set forth below, the record in this case is more than sufficient to resolve the disputed factual issues without a hearing and fully supports a denial of the Petition.

I.   Sinclair Waived or Forfeited Any Challenges to his Sentence

Sinclair, as discussed above, waived his right in the Plea Agreement, to "bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Sentencing Range of 12

to 15 years' imprisonment." (Plea Tr. at 25; Plea Agreement at 4). Thus, to the extent Sinclair is challenging his sentence, which was at the bottom of the Stipulated Sentencing Range, Sinclair "must first overcome the hurdle imposed by this provision." *Brickhouse*, 2017 WL 1049509, at *5.

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citing *United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000)) (addressing waiver of appellate rights); *Tellado v. United States*, 745 F.3d 48 (2d Cir. 2014) (addressing collateral attack waiver)). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). District courts, in determining whether a defendant understood the consequences of a waiver, are "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood . . . that he was waiving his right to appeal a sentence below [the agreed upon time]." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). The knowing and voluntary nature of the waiver can be established by demonstrating that during the plea hearing the defendant's attention was drawn to the waiver provision in the plea agreement. *See United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000). A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings. *Lebowitz v. United States*, 877 F.2d 207, 209 (2d Cir. 1989).

Courts will decline to enforce a waiver provision under very limited circumstances. *See Gomez-Perez*, 215 F.3d at 319. The exceptions to the presumption of the enforceability of a waiver include the following situations:

> when the waiver was not made knowingly, voluntarily, and competently, . . . when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, . . . when the government breached the plea

12

> agreement, . . . or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*Id.* Accordingly, the Second Circuit has "upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Id.*

Sinclair's sworn statements made in open court in response to the Court's questions demonstrate that he was fully competent to enter a guilty plea and did so knowingly and voluntarily. Among other things, Sinclair affirmed that he had been educated through the seventh grade; that the medications he was taking did not affect his ability to understand the proceedings; and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine, apart from his prescribed medications. (Plea Tr. at 8-10). The Court specifically discussed with Sinclair at the plea hearing the waiver provision of the Plea Agreement, asking him: "do you understand that under the plea agreement, you're giving up your right to appeal or otherwise challenge your sentence, so long as I sentence you at or below the stipulated sentencing range of 12 to 15 years of imprisonment?" (*Id.* at 25). Sinclair replied: "Yes, your Honor." (*Id.*). Later in the plea hearing, the Court again reiterated Sinclair's understanding of the stipulated sentencing range in the following colloquy: "Mr. Sinclair, as you heard earlier today, not only have you agreed to a Guidelines range, but you've also agreed to a sentencing range. Do you understand that you have agreed to a sentencing range of between 12 and 15 years of imprisonment?" (*Id.* at 27). Sinclair replied: "Yes, your Honor." (*Id.*). The Court then asked Sinclair: "And do you understand that your lawyer will not suggest or in any way ask the Court to consider a sentence outside that stipulated sentencing range of 12 to 15 years of imprisonment?" (*Id.*). Sinclair replied: "Yes, your Honor." (*Id.* at 28). Sinclair also confirmed that he had discussed the Plea Agreement with his

attorney, that he fully understood the Plea Agreement, and he had not been induced or forced in any way to enter into the Plea Agreement. (*Id.* at 22-24).

It cannot be disputed that Sinclair entered into the Plea Agreement, he swore that he fully understood the terms of this agreement, including the waiver provision, and that he agreed to be sentenced in accordance with his guilty plea and the Plea Agreement. As a result, the plea was knowing and voluntary. Sinclair also does not argue, nor could he, that the Government breached the Plea Agreement, that the Court based his sentence on any impermissible factors, or that the Court failed to describe the rationale for the sentence. Therefore, Sinclair's claims as to any sentencing errors are waived by the waiver provision of the Plea Agreement.

Finally, Sinclair did not file a direct appeal from his judgment of conviction, nor has he alleged cause for failing to do so, prejudice, or actual innocence. Therefore, even if Sinclair had not waived the right to collaterally attack any sentencing errors through his Plea Agreement, he has forfeited raising these claims in this proceeding because he failed to raise them on direct appeal. *See Rosario*, 164 F.3d at 732.

II.    Sinclair's Claims Fail on The Merits

A. Hobbs Act Robbery is a Crime of Violence

Sinclair argues that "without a firearm Hobbs Act Robbery is not a violence crime." (Pet. at 4). Hobbs Act robbery is a crime of violence. *See United States v. Barrett*, 102 F.4th 60, 81 (2d Cir. 2024), *vacated on other grounds*, 146 S. Ct. 482 (Jan. 14, 2026). In any event, determining whether Hobbs Act Robbery is a crime of violence had no impact on Sinclair's sentencing because he only pled guilty to Hobbs Act Robbery rather than a crime predicated on Hobbs Act Robbery constituting a crime of violence.

14

B. Upward Variance

Sinclair's argument that the Court erred in imposing an above-Guidelines sentence of 144 months' imprisonment is without merit. A sentence may be procedurally improper where "the district court miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly consider the § 3553(a) factors; bases its sentence on clearly erroneous facts; or deviates from the Guidelines without explanation." *United States v. Cook*, 2025 WL 1201863, at *1 (2d Cir. Apr. 25, 2025). "A sentence is substantively unreasonable if it cannot be located within the range of permissible decisions, if it shocks the conscience, or if it constitutes a manifest injustice." *United States v. Eley*, 2025 WL 502291, at *1 (2d Cir. Feb. 14, 2025) (quoting *United States v. Williams*, 998 F.3d 538, 542 (2d Cir. 2021)). An above guidelines sentence is substantively reasonable "where the sentencing court has examined each of the Section 3553(a) factors and explained why it concluded that an upward variance was warranted, provided the sentence can be located within the range of permissible decisions." *Eley*, 2025 WL 502291, at *1.

At the sentencing hearing, consistent with the Plea Agreement, the Court calculated the Sentencing Guidelines Range at 57 to 71 months of imprisonment. (Sent. Tr. at 22; Plea Agreement at 2-3). The Court then considered all of the Section 3553(a) factors in fashioning an appropriate sentence. (Sent. Tr. at 55-65). The Court also balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, the need to protect the public from the defendant's further crimes, and the need to avoid unwarranted sentencing disparities. (*Id.*). The Court considered Sinclair's difficult childhood and poverty he experienced, his physical and mental health conditions, and his history of substance abuse. (*Id.* at 55-62).

15

The Court recognized the potential applicability of the policy statement in Section 5K2.21 of the 2024 Guidelines Manual.[9] stating, in relevant part, that "the court may depart upward to reflect the actual seriousness of the offense based on conduct underlying a potential charge not pursued in the case as part of a plea agreement." (*Id.* at 58). The Court also recognized that Sinclair was not being charged with a third Section 924(c) violation that would subject him to a 25-year mandatory minimum sentence. (*Id.* at 58-59). Prior to imposing sentence, the Court explained that it would impose the same sentence whether imposed as a variance or departure. (*Id.* at 59). The Court has "discretion to consider facts that could hypothetically support a departure and instead choose to impose an upward variance." *United States v. Robbins*, 2023 WL 8295256, at *1 (2d Cir. Dec. 1, 2023).

Ultimately, the Court imposed an upward variance sentence of 144 months of imprisonment based on the 3553(a) factors, the need to promote respect for the law, to provide adequate deterrence, to protect the public from the defendant's further crimes, and the fact that Sinclair's criminal history score understated the severity of his criminal history, which included serious crimes such as "robbery, brandishing firearms, carjacking, narcotics distribution, fraud, visa fraud, counterfeiting, possessing contraband in prison, [and] failure to appear," and the likelihood he would commit additional crimes. (Sent. Tr. at 55-65). Therefore, the Court provided a detailed explanation of the basis for the upward variance sentence.

Finally, the Plea Agreement provided that "[n]otwithstanding the Guidelines calculation stated above, the parties agree not to seek a sentence outside the range of 12 to 15 years' imprisonment (the "Stipulated Sentencing Range"), or suggest in any way that the Probation Office

---

[9] The Court used the November 1, 2024 Guidelines Manual at sentencing because this was the manual in effect at the time of sentencing. (Sent. Tr. at 17).

16

or the Court consider a sentence outside the Stipulated Sentencing Range of 12 to 15 years' imprisonment." (Plea Agreement at 3). The Court imposed a sentence at the bottom of the Stipulated Sentencing Range. The sentence of 144 months of imprisonment was also endorsed by both defense counsel and Probation. (Sent. Tr. at 37, 52). Sinclair, pursuant to the Plea Agreement, also avoided facing a mandatory minimum consecutive sentence of 25 years' imprisonment. Therefore, an upward variance sentence of 144 months of imprisonment does not shock the conscience or constitute a manifest injustice.

### C. Career Offender

Sinclair argues that he was improperly sentenced as a career offender. (Pet. at 7). Sinclair incorrectly asserts that the Government used his past criminal conduct to request that the Court sentence him as a career offender under the Section 3553(a) factors. (*Id.*). The Plea Agreement, PSR, the parties' sentencing materials, and the sentencing hearing itself never mention sentencing Sinclair as a career offender. Accordingly, although the Section 3553(a) factors required the Court to consider Sinclair's criminal history in fashioning an appropriate sentence, he was not sentenced as a career offender.

### III.   Ineffective Assistance of Counsel Arguments

Sinclair claims that his counsel was constitutionally ineffective. (Pet. at 8-9). Sinclair argues that his counsel was ineffective in failing "to challenge or raise[] any issues pertaining [to] the government['s] cruel and unusual[] punishment and allowing [him] to sign a plea deal that never was in [his] best interest." (*Id.* at 8). Sinclair also generally faults his attorney for abiding by the terms of the Plea Agreement and requesting an upward variance sentence of 12 years of imprisonment notwithstanding the Sentencing Guidelines Range of 57 to 71 months. (*Id.* at 8-9).

17

The merits of ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Sinclair to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

"In the context of plea negotiations, a defendant must establish that his attorney either failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty." *Davis v. United States*, No. 18-CV-01308, 2019 WL 3429509, at *5 (S.D.N.Y. July 30, 2019). "'Purely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-02175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991)). Prejudice in this case requires Sinclair to show that "but for his attorney's claimed ineffectiveness, he would have gone to trial and been acquitted, or that he would have gotten a sentence lower than the one he actually received." *Davis*, 2019 WL 3429509, at *5.

During the plea allocution, Sinclair affirmed that he was "satisfied with [counsel's] representation" of him and had "discussed with her the consequences of entering a plea of guilty." (Plea Tr. at 10). The Court confirmed that Sinclair understood that, when imposing a sentence, the

Court would consider the Sentencing Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Sentencing Guidelines. (*Id.* at 19-21). The Court also confirmed that Sinclair understood that the Sentencing Guidelines Range of 57-71 months of imprisonment contained in the Plea Agreement was not binding on the Court. (*Id.* at 19-21). Finally, Sinclair understood that: (1) he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Sentencing Range of 12 to 15 years of imprisonment (*id.* at 25); and (2) his lawyer would not suggest or ask the Court to consider a sentence outside of the Stipulated Sentencing Range (*id.* at 27).

"A defendant's statements at his plea allocution 'carry a strong presumption of verity.'" *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Sinclair's statements at his plea allocution regarding his understanding of the Stipulated Sentencing Range that he now takes issue with "constitute a formidable barrier" in this collateral proceeding. *See Blackledge*, 431 U.S. at 74 ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

The decision to enter into plea negotiations with the government requires defense attorneys to make "strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124 (2011). "[S]trict adherence to the *Strickland* standard" is essential when considering attorneys' choices at the plea bargain stage, and substantial deference must be accorded to counsel's

judgment. *Id.* at 125. Sinclair ignores that but for the Plea Agreement, he was facing a mandatory minimum sentence of 25 years' imprisonment based on the government charging him with another Section 924(c) violation as alleged in the complaint. Sinclair's attorneys[10] likely reasoned that advocating for a 12-year term of imprisonment, notwithstanding the Stipulated Guidelines Range in the Plea Agreement, would save him 13 years in prison. Therefore, it is reasonable to argue that Sinclair's attorneys were, in fact, highly effective. "Pleading guilty unquestionably 'gained him a benefit in the form of more lenient sentencing.'" *Dibiase v. United States*, 2023 WL 2376223, at *4 (2d Cir. Mar. 7, 2023) (quoting *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)). Simply put, Sinclair's claim fails to establish that his counsel's representation fell below an objective standard of reasonableness.

Finally, with respect to the second prong of the *Strickland* analysis, Sinclair does not claim that he would have gone to trial but for the errors to which he now points. To the contrary, Sinclair admits that he is not asking the Court to vacate the Plea Agreement but rather to reduce his sentence based on his counsel's ineffectiveness. (Civ. Doc. 12 at 3). Accordingly, his ineffective assistance of counsel claim is without merit because he cannot demonstrate prejudice. *See Dibiase*, 2023 WL 2376223 at *4 ("Moreover, even if [defendant] could show that counsel's advice was deficient, he has not shown a reasonable probability that he would have rejected the plea deal and insisted on going to trial had he been properly counseled . . . [because] [t]hrough the plea agreement, [defendant] limited his likely sentencing exposure by avoiding mandatory consecutive sentences spanning decades on top of the sentences for the two counts to which he pled guilty."); *Tineo v. United States*, 977 F. Supp. 245, 259 (S.D.N.Y. 1996) ("Because Petitioner has failed to illustrate

---

[10] Sinclair's attorney at sentencing was not the attorney who negotiated the Plea Agreement. (Sent. Tr. at 48).

by a reasonable probability that, but for counsel's failure to object to the alleged Rule 11(c)(1) violation, he would not have pled guilty, this ground does not provide a basis for finding ineffective assistance of counsel.").

IV.    An Evidentiary Hearing is Not Warranted

Section 2255 requires a hearing to resolve disputed issues of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner is entitled to a hearing only if he establishes a plausible claim of ineffective assistance of counsel. *See Puglisi*, 586 F.3d at 213. Under the circumstances, and as set forth above, the parties' written submissions and the record in this case are more than sufficient and uncontroverted to resolve the conclusory factual issues raised by Petitioner without a hearing and fully supports a denial of the Petition. *See United States v. Martinez*, No. 09-CR-01022, 2014 WL 7146846, at *8 (S.D.N.Y. Dec. 12, 2014) ("Courts have repeatedly rejected such self-serving, uncorroborated statements that contradict statements during a colloquy as a basis to challenge a sentence."); *Orbach v. United States*, No. 11-CR-00111, 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to this Court"); *United States v. Robinson*, No. 20-CR-00415, 2025 WL 1603916, at *3 (S.D.N.Y. June 6, 2025) ("[T]he Court concludes that the parties' written submissions are sufficient to decide [petitioner's] motion, and that no hearing is required.").

## CONCLUSION

Based on the foregoing, Sinclair's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence is DENIED and no hearing is necessary.

21

As Sinclair has not made a substantial showing of a denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the civil case pending under Docket No. 25-CV-07015. The Clerk of the Court is further directed to terminate the motion pending in the criminal matter, Docket No. 23-CR-00503 (Doc. 85), and to mail a copy of this Opinion and Order to Sinclair at the address stated on the civil docket, #75927-054, U.S.P. Beaumont, P.O. Box 26030, Beaumont, TX 77720.

**SO ORDERED:**

Dated: White Plains, New York
      March 3, 2026

Philip M. Halpern
United States District Judge

22